23-7896
*Walker v. Thibault*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of January, two thousand twenty-five.

PRESENT:
        RICHARD J. SULLIVAN,
        JOSEPH F. BIANCO,
        BETH ROBINSON,
                *Circuit Judges.*

_____

MICHAEL S. WALKER,

        *Plaintiff-Appellant,*

        v.                                                    No. 23-7896

ROBERT THIBAULT, ZACHARY MCCALEB,

        *Defendants-Appellees.*[*]

_____

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

**For Plaintiff-Appellant:**                    Michael S. Walker, *pro se*, North Syracuse, NY.

**For Defendants-Appellees:**                    Thomas K. Murphy, Murphy Burns LLP, Loudonville, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the November 14, 2023 judgment of the district court is **AFFIRMED**.

Michael S. Walker, proceeding *pro se*, appeals from the district court's grant of summary judgment in favor of defendants Sergeant Robert Thibault and Officer Zachary McCaleb of the Village of Baldwinsville Police Department (together, the "Officers") on Walker's claims that the Officers used excessive force, violated his First and Fourth Amendment rights, and violated his rights under the Americans with Disabilities Act (the "ADA") when they arrested him following a traffic stop. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I.     Background

This case stems from a traffic stop that occurred on September 12, 2022 after Thibault observed Walker driving with only one working headlight and illegally

2

passing another vehicle. Thibault activated his lights and sirens in an attempt to stop Walker, but Walker, who was a food-delivery driver, refused to pull over until he reached his delivery location. By the time Walker arrived at the delivery location, McCaleb had joined Thibault in pursuit, and the Officers ordered Walker to show his hands and exit the vehicle. Instead of complying, Walker reached into the passenger seat area of the car, prompting the Officers to forcibly remove him from the vehicle. Once outside the car, Walker resisted arrest until the Officers finally handcuffed him. He was subsequently charged and found guilty in Baldwinsville Village Court of four traffic infractions.

Walker thereafter brought this lawsuit, claiming that the Officers used excessive force in effectuating the arrest. He also claimed that the Officers violated his First Amendment rights by arresting him while he was delivering food, which he alleges is part of his religious practice, as well as his Fourth Amendment rights by unlawfully searching and seizing his vehicle following his arrest. Finally, Walker, who allegedly has spinal injuries and suffers from back and nerve pain, claims that the Officers discriminated against him on the basis of those conditions in violation of the ADA.

## II. Standard of Review

We review a district court's grant of summary judgment *de novo*. *See Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019). We "must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022) (internal quotation marks omitted). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard is satisfied if no reasonable jury could return a verdict for the non-moving party. *See McKinney*, 49 F.4th at 737. While we liberally construe filings by *pro se* litigants to "raise the strongest arguments they suggest," *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted), a *pro se* appellant must still provide "a clear statement of the issues on appeal" in his brief, *Moates v. Barkley*, 147 F.3d 207, 209 (2d Cir. 1998); *see* Fed. R. App. P. 28(a).

## III. Excessive Force Claims

Walker argues that the Officers used excessive force when they removed him from his vehicle and handcuffed him. The Fourth Amendment, as

4

incorporated against the states through the Fourteenth Amendment, prohibits officers from using excessive force in making an arrest.[1] *See Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018). Whether the force used was excessive is analyzed under an objective reasonableness standard and depends on "the severity of the crime," "whether the suspect pose[d] an immediate threat to the safety of the officers or others," and "whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotation marks omitted). While a suspect resisting arrest justifies the use of some degree of force, it does not give officers a license to use unlimited force. *See Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000). Rather, the force used "must be reasonably related to the nature of the resistance and the force used . . . against the officer." *Id.* at 166. Whether an officer's use of force was reasonable must be determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Indeed, the Supreme Court has emphasized that officers need to make "split-second judgments" about

[1] Despite the fact that Walker repeatedly references the Eighth Amendment's prohibition on cruel and unusual punishment, the Supreme Court has made clear that "[w]here, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

5

the amount of force required "in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 397.

We agree with the district court that no reasonable jury could find that the Officers used excessive force against Walker. As Walker himself admitted, he refused to pull over for several minutes after Thibault activated his lights and sirens. And when Walker finally stopped and the Officers ordered him to show his hands and exit the vehicle, he disregarded their instructions and instead began reaching into the area of the passenger seat. Given these undisputed facts, the Officers were justified in using force to remove Walker from the vehicle before he could access any item located near the passenger seat, which could have been a weapon. As the Supreme Court has recognized, motor-vehicle stops "are especially fraught with danger to police officers" and pose "an inordinate risk" to officers since individuals may attempt to access weapons hidden in the vehicle. *Michigan v. Long*, 463 U.S. 1032, 1047–48 (1983).

Furthermore, Walker admitted that once the Officers removed him from the vehicle, he resisted arrest by intentionally holding his hands beneath his body so that the Officers could not handcuff him. In response, McCaleb utilized a tactical maneuver to force Walker to bring his hands out from beneath his body.

McCaleb then secured Walker's arms behind his back, enabling the Officers to finally handcuff Walker. Notably, as the undisputed video footage of the arrest demonstrates, the physical force lasted for only a few minutes; the Officers did not kick, punch, choke, or otherwise beat Walker; and the Officers did not use any physical force against him once he was in custody. In fact, the video makes clear that the Officers treated him respectfully throughout the rest of the encounter, answered his questions, and even completed the food delivery for him. Thus, based on Walker's own statements and the uncontroverted video evidence, we conclude that there is no genuine dispute as to any material fact, and the Officers were entitled to judgment as a matter of law on Walker's excessive force claims.

## IV.    First Amendment Claims

Additionally, Walker contends that the Officers violated his First Amendment rights by arresting him for "trying to practice [his] religious beliefs and complete [his] worship," which – according to Walker – required him to complete the food delivery. Dist. Ct. Doc. No. 30-5 at 30–31. While the First Amendment does protect an individual's "right to believe and profess whatever religious doctrine one desires," it "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that

7

the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (internal quotation marks omitted). Indeed, "[w]here the government seeks to enforce a law that is neutral and of general applicability, . . . it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices." *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002).

Here, the Officers stopped Walker for driving with a nonworking headlight and for illegally passing another motor vehicle by utilizing the center turn-only lane in violation of New York Vehicle and Traffic Law; they ultimately arrested him for obstructing governmental administration and resisting arrest in violation of New York Penal Law. The statutory provisions applied to Walker are neutral, generally applicable laws with a rational basis for their enforcement – to ensure the safety of driving conditions on New York roadways and to facilitate the enforcement of New York law. Accordingly, based on the undisputed facts in the record, the district court properly granted summary judgment to the Officers on Walker's First Amendment claims.

## V. ADA Claims

Walker also claims that the Officers discriminated against him based on his spinal injuries in violation of the ADA. In granting the Officers' summary-judgment motion, the district court did not address Walker's potential ADA claims. However, "[w]e may affirm . . . on any basis for which there is a record sufficient to permit conclusions of law." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). Although Walker did not specify the precise grounds for his ADA claims, the record provides no support under any theory of liability pursuant to that statute. To the extent that Walker alleged employment discrimination under Title I of the ADA on the grounds that his arrest ultimately resulted in his termination as a delivery driver, his claim fails because Title I establishes a cause of action only against certain covered entities like *employers*, which the Officers clearly were not. *See* 42 U.S.C. §§ 12111(2), 12112(a). And to the extent that Walker alleged the Officers violated Title II of the ADA by singling him out on account of his disability, *see id.* § 12132, that claim also fails because our caselaw is clear that Title II does not "provide[] for individual capacity suits against state officials," *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Therefore,

9

even though the district court did not discuss the ADA, we conclude that the Officers were entitled to summary judgment on these claims as well.

## VI. Unreasonable Search and Seizure Claims

Finally, Walker asserts that the Officers violated his Fourth Amendment right to be free from unreasonable searches and seizures. But besides a passing remark in his appellate brief that Thibault and McCaleb "illegally searched [and] seized" his vehicle, Walker does not otherwise challenge the district court's grant of summary judgment on this claim. Walker Br. at 11. "Although we construe *pro se* filings liberally, we need not manufacture claims of error for an appellant proceeding *pro se*." *Tripathy v. McKoy*, 103 F.4th 106, 118 (2d Cir. 2024) (internal quotation marks omitted). Indeed, issues raised "obliquely and in passing" or "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed forfeited." *Id.* (alterations accepted and internal quotation marks omitted). Walker thus forfeited any challenge to the district court's grant of summary judgment related to the search and seizure of his vehicle.

\* \* \*

10

We have considered Walker's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court