24-1859-cv
*Cornelius v. Luna*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of September, two thousand twenty-five.

PRESENT:
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> BETH ROBINSON,
> *Circuit Judges*.

---

KIJANA CORNELIUS,

> *Plaintiff-Appellee*,

v.                                                               24-1859-cv

JOSE LUNA, RONALD PRESSLEY, CLAYTON HOWZE, NIKKI CURRY,

> *Defendants-Appellants*,

RAY BRIGHT,

> *Defendant*.

---

| | |
|---|---|
| FOR DEFENDANTS-APPELLANTS: | ALAN R. DEMBICZAK, Howd & Ludorf, LLC, Wethersfield, Connecticut. |
| FOR PLAINTIFF-APPELLEE: | RONALD S. JOHNSON, Law Office of Ronald S. Johnson & Associates, Hartford, Connecticut. |

Appeal from orders of the United States District Court for the District of Connecticut (Janet C. Hall, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the appeal of the orders of the district court, entered on June 13, 2024 and September 9, 2024, is **DISMISSED** for lack of jurisdiction, and the case is **REMANDED** for further proceedings consistent with this order.

Defendants-Appellants New Haven Police Officers Jose Luna, Ronald Pressley, Clayton Howze, and Nikki Curry (collectively, the "Officers") appeal from the district court's partial denial of their motion for summary judgment under Federal Rule of Civil Procedure 56, as well as the district court's denial of their subsequent motion for reconsideration. In particular, the Officers challenge the district court's determination that, at this stage of the litigation, the Officers are not entitled to qualified immunity on Plaintiff-Appellee Kijana Cornelius's excessive force claim asserting a violation of his Fourth Amendment rights, pursuant to 42 U.S.C. § 1983.[1] This case arises from an incident in the intake area at the New Haven Police Department on April 22, 2018 during which the Officers used a takedown of Cornelius, forcibly restrained him on the floor in a prone position, and allegedly lifted him off the floor by the handcuffs after Cornelius was purportedly uncooperative and resistant as the Officers attempted to process him for his arrest in connection with an incident unrelated to this case. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to

---

[1] As part of its summary judgment decision, the district court granted the Officers' motion as to Cornelius's claims for excessive force pursuant to 42 U.S.C. § 1981 and the Connecticut Constitution, as well as a Connecticut state-law claim for intentional infliction of emotional distress, but denied the motion as to his Connecticut state-law claim for negligent infliction of emotional distress ("NIED"). However, the Officers do not challenge the district court's decision regarding Cornelius's NIED claim on appeal, and thus, we need not consider it. *See Elisa W. v. City of New York*, 82 F.4th 115, 124 n.4 (2023).

which we refer only as necessary to explain our decision.

Generally, "[a] grant of partial summary judgment that resolves only some of the issues raised by a complaint is not an appealable final judgment." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 781 (2d Cir. 1999). However, under the collateral order doctrine, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Therefore, we may review on an interlocutory basis a denial of summary judgment based on qualified immunity if it may be resolved "on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find." *Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir. 1996). However, "if a factual determination is a necessary predicate to the resolution of whether immunity is a bar, review is postponed and we dismiss the appeal." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 82 (2d Cir. 2007) (alteration adopted) (internal quotation marks and citation omitted); *see Ortiz v. Jordan*, 562 U.S. 180, 188 (2011) ("[An] instant appeal is not available . . . when the district court determines that factual issues genuinely in dispute preclude summary adjudication."). "[W]e review *de novo* a district court's denial of summary judgment on qualified immunity grounds." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citation omitted).

On appeal, the Officers principally argue that the district court erred by denying qualified immunity on the ground that there are material issues of fact because, viewing the facts most favorably to Cornelius, the Officers' use of force was reasonable given Cornelius's uncooperative and resistant behavior in the intake area, and such use of force did not violate clearly established law. We are unpersuaded. As set forth below, we conclude that we lack

3

jurisdiction to review the denial of summary judgment on qualified immunity grounds based upon the genuine disputes of material fact the district court identified in the record.

Under the two-step framework articulated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), the doctrine of qualified immunity protects a government official from liability unless he or she (1) "violated a constitutional [or federal statutory] right" that (2) "was clearly established" at the time of the challenged conduct. *Id.* at 201; *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012). With respect to the first prong, where, as here, "a plaintiff alleges excessive force . . . , the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam).

Police officers "violate the Fourth Amendment if the amount of force they use is objectively unreasonable in light of the facts and circumstances confronting them." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015) (alteration adopted) (internal quotation marks and citation omitted). In other words, "a government officer may not . . . employ[] a degree of force beyond that which is warranted by the objective circumstances of an arrest." *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019). In determining whether the use of force is reasonable, we must carefully consider "(1) the nature and severity of the crime . . . , (2) whether the suspect posed an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Linton v. Zorn*, 135 F.4th 19, 31 (2d Cir. 2025) (alteration adopted) (citation omitted). "In light of the fact-specific nature of the inquiry on an excessive force claim, granting summary judgment against a plaintiff on such a claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (alteration adopted) (citation omitted).

4

Here, the district court determined that, in viewing the evidence in the light most favorable to the plaintiff, there were genuine issues of material fact as to whether Cornelius was resisting, both before the Officers took him to the ground and before they later lifted him up by the handcuffs. Accordingly, the court ultimately determined that there were genuine issues of material fact as to whether the alleged force used by the Officers was objectively reasonable, thus precluding us from deciding the issue of qualified immunity as a matter of law.

Beginning with the takedown, the Officers contend that, during the initial intake interaction when Cornelius was asked certain questions and instructed to remove his shoes and jewelry, he was argumentative and spoke over the Officers. The Officers further assert that, when Cornelius was next asked to step on a line marked on the floor of the intake room and place both hands on a parallel wall so that he could be patted down for contraband, he was uncooperative and "resistant." Defendants' App'x at 101, 104. In particular, the Officers argue that Officer Howze instructed Cornelius to stand on the line and place his hands on the wall, but Cornelius did not comply with these instructions. The Officers assert that, instead, the video shows that Cornelius initially placed only his left hand on the wall, and after eventually also placing his right hand on the wall, he quickly removed it to gesture at the Officers. The Officers contend that, even if these facts are viewed in a light most favorable to Cornelius, they demonstrate that he was resisting, and thus, the Officers' takedown was an objectively reasonable use of force.

We recognize that there are cases where the video evidence is so conclusive that summary judgment is warranted, even in the face of other contradictory evidence and testimony offered by a party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the [video] record, so that no

5

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Contrary to the Officers' suggestion, this is not one of those cases. To be sure, the district court noted that "[t]he video clearly shows . . . that [Cornelius] initially placed only his left hand on the wall and did not immediately place his right hand on the wall, despite Officer Howze's instructions." Defendants' App'x at 136–37. However, the district court also correctly observed that "the video footage . . . makes clear that Cornelius placed his right hand on the wall after approximately ten seconds." *Id.* at 137. The district court further explained that, "[a]lthough Cornelius lifted his right hand again shortly thereafter," "[i]t does not appear that Officer Curry verbally commanded Cornelius to place his right hand back on the wall before she grabbed his hand," and the video indicates that, during the takedown, Cornelius "continued to stand on the line and kept his left hand on the wall." *Id.*

Moreover, Cornelius disputes that he was argumentative during the initial intake interaction and that he did not comply with Officer Howze's instructions. Indeed, because the video has no sound, it is unclear whether, in the moments leading up to the takedown, Cornelius said something to instigate the Officers, or whether something was said by one of the Officers that led Cornelius to remove his right hand from the wall.

Based on this record, the district court concluded that Cornelius's behavior did not "indisputably constitute[] 'active resistance' . . . sufficient to warrant [a] takedown," and thus, it declined to grant qualified immunity to the Officers at this stage of litigation. *Id.* We discern no error in that determination. Construing the video and other evidence in the light most favorable to Cornelius, the district court correctly concluded that a rational jury could find that, at the time of the takedown, Cornelius was not engaged in resistant conduct and that the Officers'

use of force was objectively unreasonable under the totality of the circumstances.[2]  *See, e.g.*, *Green v. City of New York*, 465 F.3d 65, 83 (2d Cir. 2006) ("If there is a material question of fact as to the relevant surrounding circumstances, the question of objective reasonableness is for the jury."); *see also Jok v. City of Burlington*, 96 F.4th 291, 296–98 (2d Cir. 2024) (finding lack of appellate jurisdiction over denial of officer's motion for summary judgment based on qualified immunity where, *inter alia*, a factual dispute existed over whether plaintiff was resisting while an officer attempted to handcuff him).

We reach the same conclusion with respect to Cornelius's allegation that the Officers lifted him off the ground by the handcuffs, even though he claims he was not resisting, and that such force was gratuitous and unreasonable.  The Officers assert that, even assuming *arguendo* that such force was used,[3] doing so was objectively reasonable given that Cornelius had "engaged in two occasions of active resistance" by "kicking, squirming and flailing," while in and attempting to sit up from the prone position, and by uttering a slur at Officer Curry.  Appellants' Br. at 27–28.  However, the district court correctly explained that "[t]he footage . . . does not clearly show Cornelius resisting or pulling away from the officers in the

---

[2]  The Officers also argue that the district court erred by analyzing whether they were entitled to qualified immunity "in the context of active resistance only" and by "failing to conclude that [Cornelius's] passive noncompliance was sufficient to be deemed resisting." Appellants' Br. at 21–22 (emphasis omitted).  We disagree.  As a threshold matter, the district court emphasized in its denial of the Officers' motion for reconsideration that its summary judgment decision "did not turn on whether resistance was 'active' or 'passive'" but was reached because "there are genuine issues of material fact about whether Mr. Cornelius's actions amounted to any kind of resistance at all." *Cornelius v. Luna*, No. 20-cv-1047 (JCH), 2024 WL 4116564, at *2 (D. Conn. Sept. 9, 2024).  In any event, we do not view this distinction to be dispositive on the qualified immunity analysis in this case.  Indeed, we have made clear that, even though some level of resistance "no doubt justifies the officer's use of some degree of force," it "does not give the officer license to use force without limit." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000) (per curiam) (emphasis omitted).

[3]  The Officers dispute whether Cornelius was lifted off the ground by the handcuffs, and the video does not conclusively show whether he was.  Nevertheless, the Officers accept this fact as true for purposes of this appeal.

moments before he was lifted." Defendants' App'x at 138. Moreover, Cornelius testified in his deposition that, while he was prone on the ground, his movements were not an attempt to escape or flee, and there is evidence in the record to suggest that they were instead attempts to reposition himself so that he could better breathe. In short, there is no basis to disturb the district court's determination that, "under [Cornelius's] version of events, a reasonable jury could easily find that the officers engaged in excessive and unnecessary force by pulling a plaintiff who was not actively resisting up by his handcuffs." *Id.*; *see, e.g.*, *Lennox*, 968 F.3d at 156 (explaining that, where plaintiffs and defendants contested the "nature and extent of [the plaintiff's] resistance," "a jury could find that [the defendant officer] used unreasonable force on an individual who was not resisting arrest and who was secured in such a manner that she posed no threat to public safety").

Finally, the factual disputes that exist at step one of the qualified immunity analysis, with respect to the reasonableness of the Officers' use of force, likewise preclude summary judgment at step two of that analysis, with respect to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Under our caselaw, "it was well established [as of April 2000] that the use of entirely gratuitous force is unreasonable and therefore excessive." *Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010). Specifically, before the underlying incident here in 2018, it already "was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others." *Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020). Therefore, if a jury found that it was unreasonable at the time of the alleged use of force for the Officers to believe that Cornelius posed a threat to the Officers, or that he was resisting, then the Officers would not be entitled to

8

qualified immunity because no reasonable officer could believe under those circumstances that the use of force (including taking him to the ground and allegedly lifting him up by the handcuffs) was lawful.

In sum, because there remain material disputes of fact as to whether the Officers' conduct was objectively reasonable and those same factual disputes bear upon whether the Officers violated a clearly established right, we lack jurisdiction at this juncture to review the district court's denial of summary judgment on qualified immunity grounds. *See Doninger v. Niehoff*, 642 F.3d 334, 352 (2d Cir. 2011) ("We do not . . . have jurisdiction to review a denial of qualified immunity to the extent it is based on a district court's finding that there is enough evidence in the record to create a genuine issue as to factual questions that are, in fact, material to resolution of the qualified immunity claim.").

\*       \*       \*

We have considered the Officers' remaining arguments and find them to be without merit. Accordingly, the appeal is **DISMISSED** for lack of jurisdiction, and the case is **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9